2009 BNH 039
_____

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW HAMPSHIRE

In re:                                                                Bk. No. 08-11568-MWV
                                                                      Chapter 7
Richard P. Borriello, Sr., and
Pamela A. Borriello,
                Debtors

*Michael J. Scott, Esq.*
*SCOTT & SCOTT, P.A.*
*Attorney for the Debtors*

*William H. Harris, Esq.*
*ZWICKER & ASSOCIATES, PC*
*Attorney for Richard Breen*

## **MEMORANDUM OPINION**

Richard P. Borriello, Sr., and Pamela A. Borriello (the "Debtors") filed a motion to convert (the "motion") their chapter 7 case to one under chapter 13 on June 16, 2009 (Ct. Doc. No. 47), pursuant to 11 U.S.C. § 706(a).[1] Creditor Richard Breen ("Breen") filed an objection to the Debtors' motion alleging that the motion should be denied because the Debtors' noncontingent, liquidated, unsecured debts exceed the limits as set under 11 U.S.C. § 109(e). Additionally, Breen argues the motion should be denied because the Debtors' conversion is motivated by "bad faith." On August 20, 2009, the Court held a hearing on the motion. The Court ordered the parties to submit supplemental memoranda indicating each party's belief as to the proper 11 U.S.C. § 109(e) calculation by September 8, 2009, at which time the Court took the matter under advisement.

### JURISDICTION

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy

---

[1] Unless otherwise indicated, the terms "Bankruptcy Code," "section" and "§" refer to Title 11 of the United States Code, 11 U.S.C. § 101 et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8.

Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.).  This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## BACKGROUND

On June 2, 2008, the Debtors filed their chapter 7 petition under the bankruptcy code.  At the time of their original filing, the Debtors scheduled a total of $473,301.25 (Ct. Doc. No. 1) in noncontingent, liquidated, unsecured debt.  Subsequently, Breen filed an adversary proceeding against Debtor Richard Borriello, Sr. ("Richard Borriello") objecting to discharge in connection with a loan made by Breen to Richard Borriello and Richard Borriello's business known as Chopper Works Performance Motorcycles, LLC ("Chopper Works").  The underlying allegations of the adversary proceeding claim that Richard Borriello committed various bad faith acts in order to defraud his creditors and remove property of the bankruptcy estate.  On June 19, 2009, the Debtors filed their motion to convert their case to one under chapter 13 pursuant to 11 U.S.C. § 706(a).  Breen filed objections to the motion alleging that the Debtors did not meet the statutory limits as proscribed by 11 U.S.C. § 109(e), and averring the Debtors' motion should be denied for "bad faith" conduct.  On July 16, 2009, the Debtors filed amendments to their schedules to remove several debts allegedly attributed to Chopper Works and for which the Debtors were not personally liable.  As a result of the amendments, the Debtors' total noncontingent, liquidated, unsecured debt was reduced to $206,176.27.  Breen claims that the Court should consider the Debtors' originally filed schedules which exceed the statutory limits set forth in 11 U.S.C. § 109 because the Debtors removed their debt owed to Breen for which Richard Borriello is personally liable.  Additionally, Breen alleges that the Debtors desire to convert their case solely to avoid a denial of discharge which is the subject of Breen's adversary proceeding against Richard Borriello.

## DISCUSSION

Section 706(a) provides that a debtor may convert a case under chapter 7 to a case under chapter 13 any time, if the case has not previously been converted under section 1112, 1307, or 1208.  11 U.S.C.

§ 706(a).  However, a debtor's right to convert a chapter 7 case is not absolute.  <u>Marrama v. Citizens Bank of Massachusetts</u>, 549 U.S. 365 (2007).  The Supreme Court in <u>Marrama</u> held that a debtor's motion to convert under 11 U.S.C. § 706 requires an analysis of whether a debtor meets the eligibility requirements set forth under 11 U.S.C. § 109(e), and whether a debtor's converted case would be subject to dismissal for bad faith.  <u>Id.</u> at 372-373.  However, <u>Marrama</u> emphasized that conversion should only be denied for bad faith in "extraordinary cases" or where the debtor exhibits "atypical" conduct.  <u>Id.</u> at 375 n.11 (also noting that the showing of bad faith necessary to deny conversion requires more than that required to deny plan confirmation); <u>see</u> <u>also</u> <u>Kuntz v. Shambam (In re Kuntz)</u>, 233 B.R. 580, 583 (B.A.P. 1st Cir. 1999) ("the debtor's one-time right to conversion . . . may only be denied in 'extreme circumstances.'").

> I.  The Debtors' Eligibility under 11 U.S.C. § 109(e)

Section 109(e) provides that a debtor is eligible to be a debtor under chapter 13 if "on the date of the filing of the petition, noncontingent, liquidated, unsecured debts [total] less than $336,900 . . . ."  11 U.S.C. § 109(e).  Chapter 13 eligibility should generally be determined as of the petition date, and not based on post-petition events.  <u>In re Smith</u>, 325 B.R. 498, 502 (Bankr. D.N.H. 2005).  As of the petition date, the Debtors schedules listed  noncontingent, liquidated, unsecured debts of $473,301.25, which exceeds the statutory limitation in § 109(e).  However, the Debtors amended their schedules reducing their noncontingent, liquidated, unsecured debts to $206,176.27.  The Debtors, on numerous occasions, have insisted that their original schedules listed debts associated with Chopper Works, and the amendments were filed to reflect only the debts of the Debtors.  Chapter 7 provides no limitation as to the amount of debt that may be discharged.  As such, when filing under chapter 7, debtors typically err on the side of caution and include all possible creditors.  That appears to be the case here.  The Debtors testified that they were not sure at the time of filing if the debts of Chopper Works were to be included in their petition so they listed all debts.  "Had the Debtors originally filed under chapter 13 the petition would

have taken into consideration the jurisdictional requirements of § 109." In re Nisbet, 1999 BNH 038 at 1, 2 (Bankr. D.N.H. 1999).

Breen further urges the Court to only consider the amount as of the petition date alleging that the Debtors sought to amend their schedules in order to meet § 109(e) requirements even though the Debtors are responsible for some of the removed debts. Specifically, Breen argues (1) that his claim against Richard Borriello in the amount of $106,259.10 should not have been removed (Ex. 1 to Ct. Doc. No. 69), (2) that many of the removed debts involved corporate funds the Debtors used for personal expenses, (3) that the Debtors failed to include various debts, and (4) the Debtors cannot propose a chapter 13 plan that would address the claim of Citizens Bank.

The Debtors argue that Breen's claim is against Chopper Works and not Richard Borriello individually. Even if the Court were to find that Breen's claim should be included in the § 109(e) calculation, the Debtors are still within the statutory limitations for chapter 13 debtors.[2] Breen also argues that the Debtors should list Chopper Works' debts because the Debtors fraudulently used corporate funds for personal use. The Debtors admit that they used funds from Chopper Works for personal use, but testified that they never received a paycheck from Chopper Works and viewed their use of corporate funds as repayment for loans they had advanced to the company. Though the Debtors admitted they failed to list certain gifts, charitable contributions, and life insurance policies, the Debtors were unaware that those items had to be listed. Further, the Debtors have since amended their schedules to include the "missing" gifts and charitable contributions. With respect to the life insurance policies, it is the Debtors' belief that they do not have an interest in the policy until and unless either spouse is deceased. Although the testimony and evidence provides the Court with doubt as to the Debtors' motives, the evidence presented is at best weak circumstantial evidence of the Debtors' improper behavior. Also, Breen's argument regarding the Debtors' possible treatment of Citizens Bank in their chapter 13 plan is without

---

[2] Adding Breen's judgment of $106,259.10 to the Debtors' amended schedules results in noncontingent, liquidated, unsecured debts totaling $312,435.37.

-4-

merit.  "Debtors cannot affect or alter their eligibility for chapter 13 by how they treat a claim . . . in a proposed plan."  In re Smith, 325 B.R. at 502.  Whether a chapter 13 plan properly treats the claim of creditors is a question to be saved for confirmation.  Accordingly, the Court finds that the Debtors meet the eligibility requirements set forth in § 109(e).  The Court must now turn to the question of whether conversion of the Debtors' case would result in dismissal due to the Debtors' bad faith conduct.

### II. Whether the Debtors' Bad Faith Conduct Precludes Conversion

As stated *supra*, denying conversion on the basis of "bad faith" conduct requires the Court to find that the Debtors' conduct reaches "extraordinary" levels.  Breen presented evidence at the hearing that caused the Court to question the Debtors' accounting practices, business practices, and whether the Debtors have concealed assets.  Breen presented evidence leading to an inference that the Debtors did not keep proper records and failed to maintain any sort of billing associated with Chopper Works.  Breen argues that this indicates the Debtors' "bad faith" and intent to conceal assets from the bankruptcy estate.  Further, Breen alleged that certain transactions conducted by the Debtors were a sham in attempt to defraud creditors.  Pamela Borriello conducted the bookkeeping and accounting for Chopper Works.  She was able to rebut the evidence presented by testifying as to her accounting methods, and explaining that any "mysterious cash transactions" could be attributed to tradework.  Additionally, Pamela Borriello testified that certain expenses that Breen categorized as the Debtors' personal expenses, like the Debtors' boat, was actually a Chopper Works expense since the boat was used to entertain clients.   Moreover, Breen's witnesses Daniel Page and John Zanellis bolstered the Debtors' testimony by corroborating the fact that mechanics often traded work, which would explain many questionably accounting items.  Though the Court does not find that all testimony and evidence presented on behalf of the Debtors is completely reliable, the Court cannot find that enough evidence was presented to find "extraordinary" or "atypical" conduct.  In addition, Breen objects to conversion on the basis that the Debtors seek to avoid dischargeability of their debts owed to Breen.  Attempting to discharge debts in chapter 13 that may not

be dischargeable in chapter 7 does not necessarily indicate "bad faith," unless it can be shown that the Debtors simply want to avoid paying creditors.  See In re Nisbet, 1999 BNH 038 at 2.  At the hearing, Richard Borriello testified that he originally filed under chapter 7 because he was unemployed and could not fund a plan.  When Mr. Borriello resumed employment, however, he believed that a plan was feasible.  The Court finds that the Debtors have met their burden in showing that they are entitled to convert their case to one under chapter 13.  However, Breen is not without recourse for the Debtors still have the hurdle of proposing a plan that the Court will confirm.

## CONCLUSION

For the reasons set out herein, the Court grants the Debtors' motion to convert to chapter 13.  A confirmation date along with a continued pre-trial date will be set in the adversary proceeding filed in this bankruptcy case.  This opinion constitutes the Court's findings and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  The Court will issue a separate order consistent with this opinion.

DATED this 29th day of December, 2009, at Manchester, New Hampshire.

/s/ Mark W. Vaughn
Mark W. Vaughn
Chief Judge